The next argument is an appeal 11-02 from 2008 Florida Citrus Mutual v. United States. Mr. McGrath, please proceed. May it please the court. Good morning. The issue presented in this case is whether or not it was reasonable for the Commerce Department in interpreting the anti-dumping statute to calculate the U.S. price of imported subject merchandise by deducting U.S. import duties as required by the statute. Why isn't that reasonable under either interpretation, that it's gross duties or net duties? Why isn't either a reasonable interpretation of the statute since the statute just says import duties and it doesn't have the word gross or the word net in there? So somebody has to decide. So why wouldn't it be reasonable whichever way Commerce decided gross versus net? Your Honor, net duties can be calculated and determined. In fact, I think there's an obligation to interpret the statute so as to accord an adjustment for net duties. Our problem with this and how the Commerce Department did it is that they're referring to net duties in a manner with which we disagree. These are not net duties paid on the subject merchandise transactions that they're required to calculate a U.S. price for. These are netting of drawback receipts, which are not refunds of duties. We understand the facts and very clearly set forth in the brief. I don't think anybody can be confused. I don't think we are confused. But I'm having trouble understanding why you think that that has to be viewed as an unreasonable interpretation of this statute that doesn't explain at all how to calculate the duties. Your Honor, the question of whether or not it is a reasonable determination, it really boils down to a matter of the statutory language itself. As you've said in previous interpretations and in Wheatland, too, the interpretation of this particular provision, in fact, the meaning of United States import duties is something that has to be determined. It is ambiguous and therefore is accorded Chevron deference. Therefore, you must take a look at the total calculation of the import duty. And in this case, the calculation of the import duty is required by the statute to be reflected in the price. The statute says that constructed export price shall be reduced by the amount included in such price, which is attributable to U.S. duty. If the drawback receipts are not somehow provided for in the U.S. price or in the price at which the merchandise is sold after importation into the United States, it can't be deducted. In fact, the net amount, the net negative amount deducted from the U.S. price as part of overall U.S. import duties. Our argument is the drawback receipts are a separate revenue flow. They are not part of U.S. import duties and therefore not covered by this statutory deduction that's required in calculating the U.S. price. Therefore, the references that are made repeatedly by the government and by the respondents in the case to net duty or net duty experience or net duty costs don't refer to the actual wording of the statute with respect to calculation of the U.S. price and the reduction for U.S. duties that are reflected in the price, or I'm sorry, that are the amount, if any, included in such price. I think I'm totally lost. What language in the statute do you think is violated by this interpretation by Congress? That precise language in 19 U.S.C. 1677 A.C. 2A is the provision of the statute that specifies how the U.S. price, or in this case the constructed export price, should be modified in order to calculate the U.S. price of subject merchandise. Another point that we made... Wait a minute. Don't go on to the next point. I don't understand this point. I'm just not following you at all. Our argument, Your Honor, is that... You're basically saying whatever duties were posted upon entry all have to count, and no matter how much drawback was later given, even if it was all of it, you still have to use the initial amount. Yes. And I don't understand how you get there. Well... You think that's a better definition of the statute than the Congress definition? You may be right, but you can't win because your definition is better. You have to prove that Congress' definition is unreasonable in light of the statute, its structure, its other sections, its purpose, etc. I don't see how you're addressing the burden that it seems to me you bear. The reason that it is unreasonable to take into account receipts of duty drawback is that duty drawback is not tied to these transactions on which the department is required to calculate the U.S. price. It is tied to later, different transactions, sales of other merchandise. The amount of the refund is dependent upon the amount of duties paid in connection with some importations of substitute merchandise. But it's not tied, and the court below made the assumption that it was tied to sales of subject merchandise. It's not. The receipt of drawback is tied to sales of substitute merchandise, which could be subject merchandise transactions or not. The calculation, and you raise the point, Your Honor, within the context of the overall intent of the anti-dumping statute, the context is that the calculation of the U.S. price should be done so that it is comparable to a point in time with a foreign market value to determine whether or not there is an unfair pricing activity that took place in the United States. Let me ask it this way, because I'm not getting any traction here, trying to understand your argument. In the memorandum in which Commerce explained why, despite their preliminary analysis and the final analysis, they were going to account for drawback, they explained why. Can you show me that that explanation is somehow nonsensical or bad economics or something? Because they give a rationale, it doesn't look ridiculous on its face. You disagree with it, maybe I disagree with it too, but the only question is, is it unreasonable? And I don't see why it would be unreasonable. But maybe you can show some example or something. Your Honor, our argument is that it is unreasonable because the Department has made no effort to try to calculate whether or not this refund is included in the price as required by the statute. If you're right in your argument on the language, you win. There's nothing to talk about. But if the Commerce Department has leeway to choose various methodologies, then we have a different circumstance. Then you have to show that the one they actually chose was not reasonable. Your Honor, we refer to the statute as the reason why it was not reasonable. The Department failed to take into account that the drawback payments that were claimed and were made were not part of the actual transaction costs. Well, of course they're not, because they happened three years later. We all know that the drawback is going to involve other transactions, not the imports. But so what? There's a constant flow of money. Yes, and in this particular portion of the statute... Commerce says, look, we get a good approximation of the real duty bite if we take the duties posted for each entry during the period of review, each entry that's the subject of the review, during the period of review, and then we subtract out the various kinds of drawback that the statute allows, even though we know, you know, everybody knows, that those drawbacks concern other transactions, not the imports in question. It's a good point, Your Honor, in looking at the overall focus of what the drawback revenue stream represents. It's not a reduction as required by the statute to the U.S. price. It is another revenue stream that may affect the company's overall cost of doing business. It does have an impact on whether they're profitable or not. It may be something that... But it determines how much money they pay into the U.S. Treasury. That's what duties in the end are. Yes, Your Honor, but it does not determine how much money they pay to the U.S. Treasury on the subject merchandise transactions that are required to be calculated. It's an overall income stream that comes into the company. If the company wishes to allocate it over some total business structure, that's a different matter. Here we're dealing with the statute that talks about how the agency must determine the U.S. price. And in this case, the U.S. price is required by the statute to be adjusted by deducting U.S. import duties. And any adjustment to that is going to have to be shown to be included in the price in some fashion. I might also point out that the respondents late in the game on this issue, I think, recognized perhaps the weakness in their own arguments. There was a presumption that this drawback amount was being taken into account in the sales of the merchandise into the U.S. And they realized, well, that presumption isn't really on the record any place other than their assertions. So they asserted in briefs and in statements in the court below that they take into account the amount that they expect to get in the future when they price their merchandise to a purchaser in the United States. That's outside the realm of what the Commerce Department must calculate for the U.S. price. And for that reason, it is unreasonable, we contend. Wait a minute. That last point is something that I had been thinking a lot about. Isn't it because they are factoring in their knowledge of anticipated drawbacks to their pricing when they set it that it is, in fact, a factor of U.S. price? I mean, they know they're going to get these drawbacks, even though they're based on different goods and not this good. I mean, they've got repeating, repeating business, you know, bringing in these imports and the exports and everything else. So it's not that they don't know these drawbacks are coming down the line. Your Honor, that is an assertion that they've made. They say, in fact, both parties that were subject in the investigation below say that they know they will be getting drawback in the future. I might point out, of course, that because it's substitute merchandise rather than drawback that necessarily is tied to subject merchandise, they may claim the export transaction, they may claim drawback against non-subject imports that took place. They make the choice, it's self-selected. Okay, but you're saying it's an assertion that they make below that they're anticipating getting this. Are you saying it's an assertion, it's an attorney argument, it's not evidence and therefore it shouldn't be considered? I'm trying to understand the importance of what you're saying. You're saying there's no evidence whatsoever in the record that it's being factored in in an anticipatory way. That's correct. The only evidence that's in the record is statements that are made by one of the respondents in response to a questionnaire answer and it's in the joint appendix. All they say, though, they don't prove it in any way. They don't demonstrate it by reason of any change in pricing or any refunds. In fact, they've admitted there are no refunds. Even if these two Brazilian importers don't take it into account themselves, that they're going to get some of this deposited money back and drawback, why isn't it reasonable for commerce to assume that most importers will take it into account in setting their price because it's predictable based on historic experience. We deposit a million every year in customs duties, but we get a half a million back every year and so we know that next year that's likely to happen again and therefore we can lower our price accordingly. Why isn't that a perfectly rational assumption for commerce to make, even if with these particular two Brazilian companies, it doesn't reflect how they price? For that very reason, Your Honor, there's nothing in the record to back up that statement. These are statements in a brief that we take into account the possibility, the amount of future income that we are likely to get because we have a history of trading. Orange juice, we import, we export. There's no guarantee they'll export that amount in the next year. Whether they take it into account or not is something that is incumbent upon the Commerce Department to get some evidence. I don't think you're following my question. The point of my question is it doesn't matter what these two companies do. If commerce reasonably expected most companies to adjust their price in view of anticipated drawback, that alone would justify the commerce methodology. Commerce made no such finding with respect to most companies. In fact, they made the finding... They don't have to make a finding. This isn't some kind of administrative trial. They can adopt a methodology based on their experience in this field. They don't have to have an evidentiary base. What they said in their administrative decision was that they're taking into account the net duty experience. They're not saying that they agree that these particular importers are going to realize that benefit later on, and therefore it will have a benefit to these particular transactions. What they did say was that they will take into account the net duty experience. We submit that that's an impermissible interpretation because it's not net duty experience. It's the experience of duties paid on these transactions in calculating the U.S. price. Okay. Let's hear from the government. May it please the court. Council for Florida Citrus admits and acknowledges that this is an issue of whether or not commerce's interpretation and calculation was reasonable, and commerce's interpretation of United States import duties was reasonable. What commerce found is that interpreting this... You know, you're not going to help us at all if you just say it's reasonable, and he says it's not reasonable. That doesn't advance the ball at all. By what measure is a court supposed to decide what's reasonable and what's not reasonable? Give us some help on how we do our job rather than just repeating the self-serving position that you have, as he has also done. Yes, Your Honor. It's reasonable because this is the actual experience of the respondents. They don't pay. They pay the gross amount initially, but they get a refund of those duties. And Florida Citrus agrees that there are circumstances in which case a refund would be taken into account in calculating the movement expenses. So what commerce found is that this is reasonable because this is actually what happens. They pay these duties, and they get a refund. And actually, in the case of Fisher, if they put up a bond, because they operate under a special program, they put up a bond, and then they get 99% back. So they don't pay 100%. They pay essentially what amounts to 1%. And that's the actual experience, and that's why it's reasonable, because we're looking at what really happened, which is they didn't pay 100%. They paid 1%. It just so happens that there is this lag, a time lag between the initial payment and the receipt of the refund. And that varied by program, and so there's a difference in what that time lag is. I think I understood his argument to be, even though it's what actually happened in this case, it isn't what... There's no evidence that people normally assume that it's going to operate this way. At least, that's what I think I understood his argument to be. There's no evidence that people automatically factor in anticipated future drawbacks on substitute goods into their price in this particular case. And that seemed to be something that commerce held in reaching its determination to include drawbacks. I think, yes, that is an issue, whether or not there needs to be proof that the duties or the refund of the duties need to be passed on. But I would point out that they don't allege that the gross duties... There needs to be proof that the gross duties are passed on to the purchaser, or that any other movement expense needs to be passed on to the purchaser. So, yes, there were assertions in the record that they include this and take this into account in calculating the price, but commerce doesn't need to find that proof. I guess one question to ask, what evidence do they think they would find of this being passed on to the purchaser? Is it an economic analysis? And other cases have examined this and found that sort of economic analysis does not need to be performed, given the amount of time it would take to perform that kind of analysis. So, is your argument that it was reasonable for commerce to do what it did, that it reached a conclusion that people anticipate and factor in these drawbacks, that certainly it was done in this case, there's evidence it was done in this case, and in commerce's history, it's sort of something that they routinely see, and therefore you don't have to introduce specific evidence, and that they introduced no evidence to the contrary either. Is that sort of the way that you would like us to approach it? Yes, sir, I think that's it in a nutshell, essentially. Forrest Fisher also contends that the refunds were not tied to imports of subject merchandise, and that's not correct. Commerce, through a verification process and through various questionnaires sent out, tied this to the importation of frozen concentrated orange juice, which is the merchandise under question in this case. And for Fisher, that meant that all of the refunds that they obtained were refunds requested on sales during the period of investigation. For Cattralli, there was a significant time lag, and that meant that they couldn't receive all the refunds claimed on sale during the period of investigation. But that doesn't mean that they shouldn't receive it, because the alternative of not taking that into account, it would be to give them no refund whatsoever, and that would essentially mean that they'd be paying, or treated as if they're paying 100%, when there's just this time lag that up to three years, but I think in Cattralli's case it was really about a year, that prevents them from receiving it during the period of investigation. So that calculation was reasonable. I think to the extent that Forrest Citrus argues that this is really just some amorphous, inchoate possibility that you might receive refunds, Fisher received in our specific program that has a treasury ruling in which they obtain these refunds. In Fisher's case, they received it quickly, and as I said, they received all these refunds on sales of merchandise during the period of investigation. For Cattralli, they recorded this in their books and records, net, of the refunds. So this is, not only is it their actual experience, this is what they paid, but this is the way they recorded it in their books and records. For these reasons, we respectfully request that the court affirm the decision of the Court of National Trade. Thank you, Mr. McGrath. Your Honor, only two points. Let me just ask you a question to make sure I'm with you. I understand your argument to be quite different than what I thought it was. I thought your argument was that the methodology adopted by Commerce was unreasonable under the second part of the Chevron test. Then when I hear your argument here this morning, at the podium, it sounds like what you're really saying is we're not under the second part of the Chevron test, we're under the first part of the Chevron test, because Congress has specifically spoken in the statutory language to the question of net versus gross, at least that's the way I'm putting it, and they've answered the question that it has to be gross, because otherwise it violates language elsewhere in the statute. Your Honor, it's my opinion that we don't need to get to the second part of Chevron, but I concede that the Court has addressed this particular provision just recently in Wheatland. I'm using the Chevron approach, going to step two, and arguing reasonableness, and in looking at reasonableness, the Court has said that it will look at this express provision in the statute. That's what I'm focusing on primarily. But also, as we have in our briefs, looking at the overall structure of the antidumping. Fair enough. I stand correct. Go ahead with your rebuttal. The points that Mr. Dearborn just made, one, he argues that it is reasonable for the government to do what they did, because it is their actual experience. All that the record shows is that they actually made claims and that they collected, and they went to some trouble to confirm and verify that they made claims, that they collected them, and that the respondent, Fisher, in fact, self-selected what import entries they would identify those claims to. That doesn't establish historical experience. That doesn't establish anything that the respondents are claiming that they take into account any kind of evidence. Does Commerce need to establish that sort of evidence when it's making determination that is clearly committed to their discretion? Once Wheatland comes out, and we all know there's now an ambiguity, under Chevron that means it's committed to the discretion of the agency for the most part. Do they really need to prove through evidence what they assert, or is it your obligation to come forward with proof to the contrary? Well, this is in responding to your question, I can also rebut the second point Mr. Dearborn made, and that is that we are offering no evidence that the gross duties are what is passed through rather than the net duties being passed through that we cite to the record. In fact, I think the agency in answering your question has built a record to indicate that these sales in most cases are made on an FOB duty paid basis. It's reasonable to presume that the duties are passed through at the initial point when the sale is made. Therefore, it's incumbent upon them to come up with some evidence to support the allegation without really any evidence in the record that the refunds are somehow passed through and taken into account in the pricing of this merchandise. Therefore, we think that the decision below was not reasonable within the context of your standard of review, and we ask that it be reversed. Thank you. Thank you both. We'll take the case under advisement.